LINDSAY, Judge.
Defendant, Curtis W. Dean, appeals from the judgment of the trial court in favor of plaintiffs, the numerous collateral heirs of Louzallie Littleton or their representatives,[1] invalidating the decedent’s nuncupa-tive testament by public act and ordering the return by defendant of a special legacy of property to the decedent’s estate. We reverse the judgment of the trial court for the following reasons.
On March 11, 1915, Margaret Littleton transferred to two of her children, Louzal-lie Littleton and Fannie Littleton, approximately 160 acres of property. The property is more particularly described as follows:
The South One-half (SV2) of the Southeast One-fourth (SEVi) of Section Eight (Sec. 8), and the East One-half (EV2) of the North-east One-fourth (NEV4) of Section Seven-teen (Sec. 17), all in Township Nine-teen (Twp. 19) North, Range Two (2) East, together with all improvements situated thereon and all appurtenances thereto belonging, including all live stock, vehicles, household goods and kitchen utensils, and all other personal property and effects being on said described real property.
The deed recited that the consideration for the sale and transfer was that the two daughters would take care of, provide for and administer to the vendor during her natural life and for the further consideration of the vendees having already taken care of and administered to the vendor since the death of the vendor’s husband on June 15, 1914.
On August 13, 1956, Louzallie Littleton and Fannie Littleton conveyed ten acres of this property to the defendant, Curtis Dean. The defendant was their nephew. The portion of the property conveyed to defendant is more particularly described as follows:
*929 For a point of beginning start at a point on the section line dividing sections 8 and 17 of Township 19 North, Range 2 East where the East right of way line of State Highway 477 intersects and crosses said section line being the South Section line of Section 8, Township 19 North, Range 2 East run thence in a northerly direction along the right of way line of the said State Highway 220 yards; thence East 220 yards; thence in a southerly direction and parallel with the highway right of way line and the western boundary of this property a distance of 220 yards to the section line; thence West 220 yards along said section line to the point of beginning. Said property being located in the SWV4 of SEV4 of Section 8, Township 19 North, Range 2 East.
The deed recited that the sale was made for the consideration of the sum of $200.00. As additional consideration and as a covenant running with the property, the defendant was to build a home on the property and was to remain thereon as long as either of the vendors was living.
Fannie Littleton died on November 9, 1965 and Louzallie Littleton died on February 3, 1978. The sisters were never married and left no ascendants or descendants. They were survived only by their brothers and sisters and/or the descendants of these brothers and sisters.
It appears that Fannie Littleton left a Last Will and Testament naming her sister, Louzallie Littleton, as the universal legatee to her estate. The estate included the property previously transferred to Fannie Littleton and Louzallie Littleton by their mother, Margaret Littleton.
Louzallie Littleton also died testate, having executed a nuncupative testament by public act on August 21, 1964. The will was passed before Lea Thompson, notary public, and three witnesses. The will appointed Carey Littleton as the executor of the estate and bequeathed to defendant the following described property:
South half of Southeast Quarter (SV2 of SEVi) of Section Eight (8) Township 19 North, Range two (2) East.
The legacy was comprised of approximately eighty acres of property which was originally conveyed to Louzallie Littleton and Fannie Littleton by Margaret Littleton.
Further, the will provided in pertinent part as follows:
I, said Notary, then read the above will to the Testatrix in the presence of said witnesses and said testatrix declared to me, said Notary, that she was entirely satisfied therewith; and the said Lou-zalle (sic) Littleton further declared to me, said Notary, in the presence of said witnesses that she was unable to sign her name having always made her mark to documents which needed her signature thereto, and that the said Louzalle (sic) Littleton did affix her mark in my presence and in the presence of said witnesses and the whole was recieved (sic), dictated, read and signed at one time without interruption and without turning aside to any other act.
The signature appears in the testament in the following fashion:
her
Louzalle X Littleton
mark
The will was offered for probate, admitted, ordered recorded and executed on October 5, 1978. Carey Littleton was permitted to qualify as the executor of the estate.
By judgment dated November 20, 1978, the executor was authorized to convey the special legacy of property to the defendant. It appears that this legacy included the ten acres previously conveyed to defendant in 1956. By deed dated November 20, 1978, Carey Littleton transferred the property to the defendant. By judgment dated July 11, 1979, the executor was authorized to sell the remaining eighty acres of property by private sale. The property was then sold by private sale in forty acre tracts to third parties.
After the sale, on July 30, 1979, the proposed Tableau of Distribution for Louz-allie Littleton’s estate was filed. An opposition to the Tableau of Distribution was *930 filed by the collateral heirs on August 9, 1979. On August 13, 1979, a petition to annul the probated testament and to set aside the sales of the property was filed in the succession of Louzallie Littleton.
The heirs then appealed the judgment of the trial court authorizing the private sale of the remaining eighty acres of property. See Succession of Littleton, 382 So.2d 1054 (La.App. 2d Cir.1980), writ denied, 385 So.2d 792 (La.1980). In Succession of Lit-tleton, supra, this court found that the record did not disclose any irregularities in the succession proceedings to the point of that judgment and affirmed the trial court judgment. This court noted that the testament had been ordered recorded and executed and held that its nullity could only be declared after a contradictory hearing in the trial court. This court further noted that the plaintiffs were not precluded from asserting whatever rights they had in seeking to annul the will or to set aside the sales in the pending petition to annul or other appropriate proceedings in the trial court.
The forced heirs of Margaret Littleton and/or their representatives also instituted an action in the succession of Margaret Littleton on July 5, 1979 to set aside the original conveyance of the 160 acres of property from Margaret Littleton to her daughters, Fannie Littleton and Louzallie Littleton and the subsequent transfers of that property. The heirs prayed that the property be returned to the estate of Margaret Littleton.
The two actions, The Estate of Louzallie Littleton v. Curtis Dean, et al and The Estate of Margaret Littleton v. Curtis Dean, et al, were consolidated on September 30, 1982 and a trial on the merits was held on January 17, 1983.
After examining the evidence, the trial court held that the original conveyance of the property by Margaret Littleton to Louzallie Littleton and Fannie Littleton and the subsequent sales of various portions of that property were valid, including the sale of the ten acre tract to defendant in 1956. The trial court further held that the nuncu-pative will by public act executed by Louz-allie Littleton was a nullity and ordered the return of the special legacy of property to the estate by the defendant, less and except the ten acres previously conveyed to the defendant.
During the pendency of this appeal, defendant filed a peremptory exception of non-joinder of indispensable parties for the first time in this court. Defendant alleged that the property had been sold by him and his wife to various vendees by cash sale deeds executed prior to the filing of either a notice of lis pendens or the instant litigation. Defendant alleged that the plaintiffs had failed to join the subsequent vendees of the property which was conveyed to him by the special legacy and these vendees are indispensable parties.
On appeal, the only issues before this court are whether the trial court erred in finding that the nuncupative will by public act of Louzallie Littleton was invalid under LSA-C.C. Art. 1579 and whether defendant’s peremptory exception should be sustained.
PEREMPTORY EXCEPTION
It is first necessary to consider whether this court should grant the defendant’s peremptory exception.
LSA-C.C.P. Art. 2163 provides as follows:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.
Indispensable parties are defined by LSA-C.C.P. Art. 641 as follows:
Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a *931 complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
No adjudication of an action can be made unless all indispensable parties are joined therein.
While it appears likely that the alleged subsequent vendees would be indispensable parties in the instant action, the trial record is devoid of any evidence or testimony as to these subsequent transfers of the property by the defendant. The only indication that such transfers had occurred are the certified copies of the cash sale deeds which were filed with the peremptory exception.
LSA-C.C.P. Art. 2163 requires that proof of the exception must appear of record. See Jim McCary, Inc. v. Price, 391 So.2d 921 (La.App. 2d Cir.1980). In the instant case, there is essentially a total absence of evidence in the trial record to establish the grounds for and validity of the exception of non-joinder of indispensable parties. See LSA-C.C.P. Art. 2128. For this reason, we deny the defendant’s exception.
This court further notes that the deeds filed with defendant’s peremptory exception were deeds executed by him and were matters of public record of which defendant had knowledge when the instant action was commenced in the trial court and defendant was not precluded from raising this issue by any actions of the plaintiffs. See Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982).
VALIDITY OF WILL
The Louisiana Civil Code sets forth the following formal requirements for a nuncu-pative testament by public act.
LSA-C.C. Art. 1578:
The nuncupative testaments by public act must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place.
This testament must be dictated by the testator, and written by the notary as it is dictated.
It must then be read to the testator in presence of the witnesses.
Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts.
LSA-C.C. Art. 1579:
This testament must be signed by the testator; if he declares that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act.
Nuncupative testaments by public act prove themselves and the law which governs their confection must be strictly complied with. The purpose of the formalities “... for execution of nuncupative wills by public act is to guard against and prevent fraud, mistake, imposition or deceit and to afford a means of determining their authenticity and prevent substitution of some other writing in place thereof.” Succession of Guidry, 145 So.2d 613 (La.App. 4th Cir.1962) at 616 (citation omitted).
It is well-settled that proof of noncompliance with the formalities which are required in the execution of a nuncupative testament by public act must be peculiarly strong to overcome the presumption which favors its validity. See Succession of Orlando, 419 So.2d 559 (La.App. 4th Cir.1982) and Succession of Smith v. Domangue, 297 So.2d 717 (La.App. 1st Cir.1974).
The testament in the instant case meets the formalities required by LSA-C.C. Art. 1578. However, the trial court held that the testament failed to meet the requirements of LSA-C.C. Art. 1579 in that it did not include an express declaration as to the physical disability or cause which prevented Louzallie Littleton from signing.
LSA-C.C. Art. 1579 specifically states that the testament must be signed by the testator. However, if the testator declares that he knows not how or is not able to sign, then express mention of this declaration, as well as of the cause which hinders *932 the testator from signing, must be made in the act.
The article clearly sets forth two separate and distinct exceptions to the requirement that the testator must sign the will, 1.e., either a physical disability or condition or illiteracy.
The declaration of a physical disability would be required under the article when the testator declares he is unable to sign, as distinguished from the testator’s declaration that he knows not how to sign. When the testator declares that he knows not how to sign his name, the cause which hinders the testator from signing becomes immediately apparent, that is, the testator is illiterate. Thus, the declaration of a physical disability would not be required. In other words, the article requires a recitation of 'a physical disability when the testator declares that he is not able to sign, whereas if the testator's declaration shows that he does not know how to sign, no identification of a physical disability is necessary as the “hindering” cause, if one is required by the Code in this instance, is implicit in the declaration itself.
The question in the instant case is whether there is a sufficient declaration of illiteracy in the testament. The testament contained the declaration of Louzallie Littleton that she was unable to sign her name, having always made her mark on documents which needed her signature.
The trial court erred in holding that this declaration failed to meet the requirements of LSA-C.C. Art. 1579. The expression in the will that “she was unable to sign her name”, followed by the phrase that she had “always made her mark to documents which needed her signature thereto” and that she “did affix her mark” clearly shows that the testatrix did not know how to sign her name. (Emphasis added) The language used in the declaration clearly establishes that Louzallie Lit-tleton was illiterate as she always made her mark on documents which needed her signature. An examination of the declaration contained in the will in its entirety leaves no doubt that the testatrix did not know how to write and was thus precluded from signing. This declaration was sufficient to meet the requirements of LSA-C.C. Art. 1579. See also Brand v. Baumgarden, 24 La.Ann. 628 (New Orleans, 1872) and Hennessey’s Heirs v. Woulfe, 49 La.Ann. 1376, 22 So. 394 (1897), wherein, declarations of illiteracy were found to be sufficient.
Further, in examining the requirements of LSA-C.C. Art. 1579, the court in Succession of Watson, 157 So.2d 612 (La. App. 4th Cir.1963),[2] noted that there has been a uniform pronouncement of the courts of this state that a recitation of a physical incapacity to sign is sufficient in those cases where the testator has not affixed his signature to the testament because of his physical condition. See also Succession of Davis v. Richardson, 226 La. 887, 77 So.2d 524 (1955)[3] and Stelly v. Stelly, 175 So.2d 829 (La.App. 3rd Cir. 1965),[4] writ refused, 178 So.2d 662 (La. 1965). Express mention as to the exact cause or nature of the disability is not necessary under the article.
As noted by the Supreme Court in the Succession of Crouzeilles, 106 La. 442, 31 So. 64 (La.1901), while the observance of the legal formalities required by law in the execution of wills should be rigidly enforced, it is not the duty of the court to refuse to carry out the wishes of the decedent by pushing the requirements of the law to extremes.
. For these reasons, the demands of the plaintiffs to annul the testament of the decedent are rejected and the judgment of *933 the trial court against defendant, Curtis W. Dean, is reversed at the costs of the plaintiffs.

. It appears that there are over fifty heirs involved in these proceedings.

. The declaration of the decedent that she could not sign her name because of "physical disability" was found to be sufficient.

. The declaration of the decedent that she could not sign her name due to "physical condition” was found to be sufficient.

.The declaration of the decedent that she was unable to sign her name because she was "ill" was found to be sufficient.